Warner WILLIAMS, Non Compos Mentis, Who Sues By and Through His Committee, Myrvin M. L. Williams, Appellant,

v.

UNITED STATES of America, Owner of the Steamship Nelson W. Aldrich, and Moore McCormack Lines, Incorporated, its agent, Appellees.

Nos. 6991, 7079.

United States Court of Appeals
Fourth Circuit.

Argued Oct. 5, 1955.

Decided Dec. 16, 1955.

Henry E. Howell, Jr., Norfolk, Va. (Jett, Sykes & Howell, and Kanter & Kanter, Norfolk, Va., on brief), for appellant.

Charles R. Dalton, Jr., and Harry E. McCoy, Jr., Norfolk, Va. (L. Shields Parsons, U. S. Atty., Norfolk, Va., on brief), for appellees.

Before PARKER, Chief Judge, and SOPER and DOBIE, Circuit Judges.

DOBIE, Circuit Judge.

These two appeals arise from the single case of Warner Williams, a mental incompetent (hereinafter referred to as Seaman), who by his Committee sues the United States, as owner of the merchant vessel Nelson W. Aldrich, and Moore McCormack Lines, Inc., as general agent for the United States in the operation of this vessel. The suit was commenced as a civil action in admiralty before the United States District Court for the Eastern District of Virginia on March 30, 1954, against the United States pursuant to the provisions of the Suits in Admiralty Act, 46 U.S.C.A. § 741 et seq., the Jones Act, 46 U.S.C.A. § 688, and under the general principles of admiralty law. Suit against Moore McCormack Lines (hereinafter referred to as Agent) was based solely upon general principles of admiralty law.

The libels alleged Seaman became mentally ill while serving aboard the Nelson W. Aldrich, was abandoned by the Government and the Agent, was arrested and thereafter committed to a state mental institution, which was wholly inadequate for treating such illness, thus aggravating Seaman's mental condition. He sought damages, maintenance and cure from both defendants.

As the original libel was filed more than two years and four months after Seaman left the Aldrich, both defendants filed exceptions raising the two year statute of limitations provided by the Suits in Admiralty Act, 46 U.S.C.A. § 745. In addition, Agent pleaded the affirmative defense of General Agency under the same code provision.

District Judge Bryan heard the exceptions, dismissed the action against the Agent and further dismissed the Government from all claims other than for maintenance, cure and damages for failure to provide maintenance and cure arising within two years prior to the institution of this suit. Judge Bryan, in a second memorandum, allowed the filing of an amended libel so that Seaman might specify more precisely the exact nature of his damages.

The amended libel alleged that the Government failed to provide Seaman with proper treatment and cure of his mental illness which had its inception aboard the vessel, and that Seaman was committed to Central State Hospital, Petersburg, Virginia, which did not fulfill the obligation for maintenance and cure and, in fact, so aggravated Seaman's condition as to justify an award of damages arising within the two year period prior to the institution of this suit.

The case was heard on the amended libel before District Judge Hoffman, who rendered an opinion denying Seaman any recovery and dismissing both libels.

He ruled, in effect, that although Central State Hospital did not afford Seaman proper and adequate mental care, the Government was under no duty to investigate the adequacy of a state supported mental institution to which Seaman was sent (pursuant to papers signed by Seaman's father), and in the absence of facts showing that the Government knew of these inadequate facilities, Seaman's claim for damages must be dismissed. Seaman has appealed to us from Judge Bryan's decree, reported at 133 F.Supp. 317, and from Judge Hoffman's decree, reported at 133 F.Supp. 319.

These appeals present four questions, namely:

(1) Does insanity of a Seaman toll the two year statute of limitations provided in the Suits in Admiralty Act, 46 U.S. C.A. § 741 et seq.?

(2) Was the general agent of the United States, Moore McCormack Lines, Incorporated, properly dismissed from this suit?

(3) Is Seaman entitled to recover damages from the shipowner because of his commitment to Central State Hospital?

(4) Is Seaman entitled to recover an award for maintenance and cure during his commitment to Central State Hospital?

We find the actions of both District Judges, as to these questions, correct, and the decrees of the District Court are affirmed.

The facts of this case are detailed and lengthy. As found by Judge Hoffman, 133 F.Supp. at page 320:

"Williams, a young Negro twenty-eight years of age, was one of twelve (or thirteen) children born in a rural area near Williamston, North Carolina. All of the evidence points to a normal family with no indications of insanity as to any other member. The testimony conclusively shows that libellant was normal in every respect when he signed on the vessel on or about September 17, 1951, as a 'food handler' (Messman F. H.). Libellant was examined by Dr. Thomas M. Vorbrinck and passed as physically fit for duty on September 27, 1951. The vessel sailed for France and no unusual or peculiar actions on the part of libellant were noted on the voyage to Europe or during the brief stay in France. In fact, until the vessel was approximately one week out on its return voyage nothing unusual was observed by any of the crew members. At that time libellant obviously became afflicted with a mental ailment, the details of which are not pertinent, but which were known by the entire crew and the Master of the vessel. Upon arrival at Quarantine, a physician came aboard and examined the crew, but no report was apparently made as to libellant's mental condition. While the dates are not essentially pertinent, it appears that the vessel dropped anchor in the harbor of Hampton Roads late one Saturday; that one crew member secured from the Captain the address of libellant's family, went ashore, and caused libellant's father to be notified of his condition; that orders were posted not to permit libellant to leave ship and, on one occasion, libellant created a scene in an effort to board a launch taking crew members ashore; that the Captain left the vessel on Saturday night and was not seen thereafter until the crew (excepting libellant) were paid off by the Shipping Commissioner the following Monday at 11 A.M.; that libellant was aboard on Sunday morning and, while the evidence does not so disclose, was apparently successful in getting aboard a launch on that day; that libellant was taken in custody on Sunday at Newport News by local authorities and placed in the Newport News jail, the details of which were not revealed.

"Allen Williams, libellant's father, arrived in Newport News on the Sunday night in question, but it was too late for him to see his son.

He returned again on Tuesday but was told that he couldn't see libellant. The following Saturday he again made the trip from Williamston to Newport News and, while he indicated that he could not recall having seen his son on this occasion, he apparently signed the necessary papers to cause a hearing to be had on his son's mental condition. In any event, the father was then advised that libellant would be sent to an institution at Williamsburg or 'some other place'. The following week the lunacy commission regularly committed libellant pursuant to the laws of the State of Virginia, to the Central State Hospital at Petersburg, Virginia—the only public or private institution available to Negro mental patients in Virginia. The evidence shows that, while libellant is the father of a young son living in North Carolina, libellant was a resident of Virginia for at least eight years before signing on the vessel, and hence Virginia is the proper state to have cared for him as a public charge."

Further, after Seaman's admission to Central State Hospital on November 23, 1951, he was examined and evaluated by the staff, his diagnosis being depressive psychosis, manic type. Seaman remained at this hospital, except for a very short furlough, until he was removed to the United States Public Health Service Hospital at Lexington, Kentucky, following Judge Hoffman's opinion of April 19, 1955. During the month of January, 1955, which was after the institution of this suit, Seaman was re-examined by psychiatrists who were of the opinion that he was suffering at that time from schizophrenia.

■ On this appeal, Seaman asks us to engraft an exception to the two-year Statute of Limitations provision of the Suits in Admiralty Act, to hold that the running of this statute is tolled by insanity, and to rule that the District Court erred in not awarding damages, in dismissing the Agent, and in failing to award maintenance for the period of his confinement at Central State Hospital.

Seaman served aboard the Nelson W. Aldrich from September 17, 1951, until November 12, 1951, when he left the ship. This suit was commenced on March 30, 1954, some two years and four months after the original cause of action arose. It was thus controlled, when pleaded by way of defense by both defendants, by Section 745 of the Suits in Admiralty Act, 46 U.S.C.A. § 745, which reads in part as follows: "Suits as authorized by this chapter may be brought only within two years after the cause of action arises * * *." The statute contains no saving clauses for disability of any kind. Sgambati v. United States, 2 Cir., 172 F.2d 297, certiorari denied 337 U.S. 938, 69 S.Ct. 1514, 93 L.Ed. 1743.

Two exceptions to the rigid prevailing rule, that such statutes of limitations cannot be extended under any circumstances, have been carved out by our courts: in the prisoner of war situation, Osbourne v. United States, 2 Cir., 164 F.2d 767; and in the fraud situation, Scarborough v. Atlantic Coast Line R. Co., 4 Cir., 178 F.2d 253, 15 A.L.R.2d 491, certiorari denied 339 U.S. 919, 70 S.Ct. 621, 94 L.Ed. 1343. We are unimpressed with the argument that insanity likewise should toll this Statute of Limitations and we expressly hold that it does not. See, to like effect, Kalil v. United States, D.C., 107 F.Supp. 966, and also Judge Bryan's reasoning, 133 F.Supp. 318–319.

■ On the question of the District Court's dismissal of the Agent from this suit, we find ourselves in accord with Judge Bryan's views, 133 F.Supp. 319:

"While the claim now prosecuted against Moore-McCormack is not statutory and the only limitation is laches, discussion of its timeliness would be merely academic, for the claim itself is foreclosed by the 1950 amendment to the Suits in Admiralty Act. This amendment declares the cause of action afforded by the

statute against the Government to be 'exclusive of any other action by reason of the same subject matter against the agent * * * of the United States * * * whose act or omission gave rise to the claim'. Libelant urges, and cites certain legislative history seemingly supporting his contention, that the amendment was not intended to merge, or otherwise preclude, recovery against the agent for the latters own negligence. But the words of the statute express a broader purpose. Certainly on the present facts the language of the law is explicit in its denial to the libelant of a right of action against Moore-McCormack; it seems tailored to the present situation. Surely the omissions charged to Moore-McCormack occurred in its agency-ambit. The terms of the statute are so opposite and so uncompromising that they end discussion of the point."

On this appeal, Seaman again has urged that the Agent had a separate and distinct duty, relying on Weade v. Dichmann, Wright & Pugh, Inc., 337 U.S. 801, 69 S.Ct. 1326, 93 L.Ed. 1704. We feel this question is precluded by the Supreme Court's rejection of such an argument in Cosmopolitan Shipping Co. v. McAllister, 337 U.S. 783, 69 S.Ct. 1317, 93 L.Ed. 1692, which was argued and decided the same date as the Weade case, which we feel to be neither in point nor material to this question.

■■ Was Seaman entitled to recover damages because of his commitment to Central State Hospital? It was contended that his mental illness was aggravated by the Government's failure to remove him from the State institution to a Federal hospital; that this was an affirmative duty and was one that the acts of a third party could not affect.

The evidence revealed that Seaman left his ship on November 12, 1951; that he was committed to Central State Hospital on November 20, 1951, by order of a proper State court on the petition of his own father; and that the first knowledge the Government had of his whereabouts was on March 24, 1952. On October 7, 1953, in a letter sent to the Department of Commerce, the Government was advised by Seaman's counsel, for the first time, that the treatment he was receiving was inadequate. Suit was commenced March 30, 1954, upon the appointment on that date of Seaman's brother as his Committee.

We are mindful of the fact that hospitals for mental patients in Virginia, as is the situation in many other States, are very undermanned. Central State Hospital, however, is the only hospital in Virginia treating negro mental patients; it is said to be comparable to the other State mental institutions; and that these institutions house ninety-six per cent of the hospitalized mental patients in Virginia. The District Court applied the doctrine of foreseeable circumstances and concluded that this hospital was the one Seaman would have been placed in under these circumstances, even if normal channels had been utilized by the Government.

Once Seaman was in this State mental institution, having been committed there by his own father, the shipowner was justified in assuming that Seaman would receive ordinary and reasonable care. We defined the standard of ordinary and reasonable care as fulfilling the shipowner's duty in Rodgers v. United States Lines Co., 4 Cir., 189 F.2d 226. See, to like effect, The Bouker No. 2, 2 Cir., 241 F. 831.

We have been unable to find any authority to meet the factual situation presented here. In De Zon v. American President Lines, 318 U.S. 660, 661, 63 S.Ct. 814, 87 L.Ed. 1065, the alleged negligence was that of the ship's doctor and a directed verdict in favor of the shipowner was affirmed. In our case Seaman's family took charge of him and had him committed to the Central State Hospital. Any claim on the score of Seaman's commitment is barred by the Statute of Limitations. Nor is there any substantial evidence that Seaman's condition was aggravated during the few months within the limitation period preceding the institution of the instant suit,

even if it should be supposed that the shipowner or Government was liable for the treatment of Seaman after it received notice of the inadequacy of the Central State Hospital.

As stated by Judge Hoffman, 133 F. Supp. 319, 325: "Until and unless the inadequate facilities and personnel at Central State Hospital were brought to the attention of the shipowner by competent proof, the respondent shipowner should not be required to assume the contrary." After noting the conflicting testimony of medical experts as to the value of more aggressive treatment for Seaman, Judge Hoffman, at page 326, made the following finding of fact:

"The claim is in failing to render proper care to libellant. It is in the nature of an 'aggravation' to the existing disease. The question of aggravation is very indefinite and its extent is probably not susceptible of proof in any event. What the end result would have been had libellant been sent to the Public Health Service Hospital at Lexington, Kentucky, is, at best, speculative."

The District Court, we think, did not err in failing to award damages to Seaman because of his commitment to Central State Hospital.

■■ Last, we find no merit in Seaman's contention that he was entitled to an award for maintenance and care during his commitment at Central State Hospital. It is a time-honored principle that where a seaman has incurred no expense or liability for his cure or maintenance, his claim for such will be denied. Johnson v. United States, 333 U.S. 46, 68 S. Ct. 391, 92 L.Ed. 468; Field v. Waterman S. S. Corp., 5 Cir., 104 F.2d 849; The Bay Mead, 9 Cir., 88 F.2d 144. As found by the District Court, 133 F.Supp. 319, 327:

"He has been provided maintenance, presumably at the expense of the Commonwealth of Virginia. There is no evidence that libellant, or any person legally liable for his support, has been called upon to pay the expenses of his care, treatment and maintenance in Central State Hospital * * *. The rule of maintenance is a substitute for room and board, all of which has been provided. Libellant's claim for maintenance is disallowed."

The only evidence introduced on Seaman's behalf on this point was the testimony of Leroy Phillips, a fellow seaman. He testified that pursuant to an agreement between the Union and the Agent, the sum of $8.00 a day was paid as maintenance to seamen who couldn't sleep and eat aboard ship. This agreement was not introduced in evidence nor was it shown that Seaman, or any person legally liable for his support, had incurred the expense of his maintenance while Seaman was a patient at Central State Hospital. Our view on this point is further confirmed by the facts in this case, particularly the circumstances surrounding his commitment to this hospital.

The decrees of the District Court are, accordingly affirmed.

Affirmed.