Todosio CASIAS and Dorothy Casias, Plaintiffs-Appellants,

v.

UNITED STATES of America, Defendant-Appellee.

No. 75–1595.

United States Court of Appeals, Tenth Circuit.

April 2, 1976.

Rehearing Denied May 20, 1976.

Gerald A. Kay, Denver, Colo., on briefs, for plaintiffs-appellants.

James L. Treece, U. S. Atty., Douglas D. Doane, Asst. U. S. Atty., Denver, Colo., on briefs, for defendant-appellee.

Before LEWIS, Chief Judge and HILL and SETH, Circuit Judges.

HILL, Circuit Judge.

Appellants brought this action against the United States under the Federal Tort Claims Act, 28 U.S. §§ 1346(b), 2671 *et seq.*, to recover damages resulting from the alleged medical malpractice of the Veterans Administration Hospital in Denver, Colorado. The trial court entered judgment against appellants on the ground the administrative claim was not filed within the two years allowed by 28 U.S.C. § 2401(b) and therefore the court was without jurisdiction.[1]

Section 2401(b) provides in pertinent part:

A tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within *two years after such claim accrues* . . . . (Emphasis added.)

The fundamental question in this appeal is when the claim accrued so that the time for filing started to run. In medical malpractice actions the claim accrues "when the claimant discovers, or in the exercise of reasonable diligence should have discovered, the alleged malpractice." *Reilly v. United States*, 513 F.2d 147 (8th Cir. 1975); *Portis v. United States*, 483 F.2d 670 (4th Cir. 1973); *Ashley v. United States*, 413 F.2d 490 (9th Cir. 1969). With this rule in mind we will set out the facts.

1. Institution of suit within the two-year period is a jurisdictional requirement. *E. g., Caton v. United States*, 495 F.2d 635 (9th Cir. 1974).

Appellant Todosio Casias[2] entered the V.A. hospital to undergo a tonsillectomy. On November 14, 1969 he was given two pre-operative injections by a nurse employed by the hospital. Appellant alleged these injections were negligently performed and severely injured his sciatic nerve. This resulted in intense pain, extended medical treatment and eventual total paralysis of his left leg.

■ The trial court found appellant should have discovered the acts constituting malpractice in December, 1969. The administrative claim was not filed until July 24, 1972. The trial court based its conclusion on the following facts, which are fully supported in the evidence.

(1) Appellant experienced pain in his left foot immediately upon receiving the injections. He complained to the nurse who replied that he had not received an injection in the foot.

(2) Appellant returned to the hospital on December 2, 1969, complaining of pain and increasing paralysis in his left leg. He was examined by Dr. Pressly who diagnosed his condition as sciatic neuritis (inflammation of the sciatic nerve). Although appellant testified he thought this condition was some form of arthritis or rheumatism, he admitted on cross-examination that he associated his condition with the injections.

(3) During a subsequent examination on December 12, 1969, appellant told Dr. Pressly he believed his condition was the result of the injections. Dr. Pressly said he agreed.

(4) On December 16, 1969, appellant was readmitted to the V.A. hospital where doctors pursued various treatment procedures, including a "sympathetic block" and a "lumbar sympathectomy." When these failed, appellant was scheduled for a rather radical procedure known as a "cordotomy," but it was never performed because appellant was apparently considered by doctors to be mentally unready for it.

(5) On April 4, 1970, appellant consulted a private neurologist about his condition. Appellant told the doctor his "problem began on November 14, 1969," when "a nurse gave me a shot in the left hip."

From this evidence it is clear that well before the crucial date appellant knew he was injured and knew the act which caused the injury. The trial court also found that these consequences were so "unusual and unexpected" that a reasonable person would have been alerted that there may have been negligent treatment. *Brown v. United States*, 353 F.2d 578 (9th Cir. 1965); *Ciccarone v. United States*, 350 F.Supp. 554 (E.D.Pa.1972), *aff'd*, 486 F.2d 253 (3d Cir. 1973). Unless the trial court's findings are clearly erroneous,[3] the time started running on appellant's claim and expired before he filed it.

Appellant's contention that the trial court erred is based primarily on *Jordan v. United States*, 503 F.2d 620 (6th Cir. 1974). That case held that even though a plaintiff has knowledge that would otherwise require an investigation, he may be excused from that duty by a doctor's "credible explanation" of the cause of his injury. Appellant contends he was given such an explanation by Dr. Pressly who told him he had "sciatic neuritis." Appellant says he thought this was like arthritis or rheumatism and therefore did not assume it could be the result of malpractice.

The trial court fairly considered this rule in viewing the evidence and found as a matter of fact that no such explanation was given in this case. The doctor's term "sciatic neuritis" was only his name for appellant's condition, not an explanation of its

The trial court's judgment was entered after an evidentiary hearing on this issue alone.

**2.** This action was commenced by both Todosio Casias and his wife, Dorothy Casias, for their separate injuries. For convenience, in the remainder of this opinion we will refer solely to Todosio Casias in the singular as appellant.

All that is said, however, applies to both appellants.

**3.** The alleged trial court errors are issues of fact and are governed by the clearly erroneous rule. *Reilly v. United States*, 513 F.2d 147 (8th Cir. 1975).

cause. There was nothing in the doctor's statement that could be considered misleading as to the cause of appellant's condition. In fact, the doctor agreed with him that injections were probably the cause.

Appellant's contention concerning the "credible explanation" is really just another way of saying a reasonable man would not have discovered the acts constituting malpractice. In this regard the court in *Reilly v. United States, supra* at 150, stated that the concept of reasonable diligence does not ignore a plaintiff's reliance on his doctor's statements, "[b]ut when the facts became so grave as to alert a reasonable person that there may have been negligence related to the treatment received, the statute of limitations began to run against appellant's cause of action." Even if appellant did rely to some extent upon the doctor's statements, we believe it was entirely proper for the trial court to find that intense pain and total paralysis were such extraordinary consequences of routine pre-operative injections that a reasonable person should have been alerted to the possibility of negligence.

Appellant makes some argument that he could not discover the cause of the injury sooner because of preexisting injuries to the same leg. We can find no indication that this issue was presented to the trial court; it was barely hinted at in appellant's opening brief and finally was emphasized only in his reply brief. We hold the issue has not been properly preserved for appellate review. *See, e. g., Operating Engineers, Local 953 v. Central Nat'l Life Ins. Co.*, 501 F.2d 902 (10th Cir. 1974), *cert. den'd*, 420 U.S. 926, 95 S.Ct. 1123, 43 L.Ed.2d 397.

Appellant next contends the trial court erred in refusing to consider appellant's mental condition during his treatment as a possible basis for tolling the statute of limitations. We hold the trial court was correct. Insanity, such as constitutes a legal disability in most states, does not toll the statute of limitations under the Federal Tort Claims Act. *Accardi v. United States*, 435 F.2d 1239 (3d Cir. 1970); *Williams v. United States*, 228 F.2d 129 (4th Cir. 1944), *cert. den'd*, 351 U.S. 986, 76 S.Ct.

1054, 100 L.Ed. 1499, *rehearing den'd*, 352 U.S. 860, 77 S.Ct. 26, 1 L.Ed.2d 71; *Jackson v. United States*, 234 F.Supp. 586 (E.D.S.C. 1964).

Finally, appellant contends it was error to refuse to admit a certain medical report as evidence. The error, if any, is harmless and warrants no discussion. Having reviewed this case thoroughly, we are in complete agreement with the judgment of the trial court.

AFFIRMED.