Eldon A. C. ZEIDLER, by and through his legally appointed Conservator, Malcolm G. Copeland, Plaintiff-Appellant,

v.

The UNITED STATES of America and the Veterans Administration, an agency of the United States of America, Defendant-Appellee.

No. 78–1190.

United States Court of Appeals, Tenth Circuit.

June 13, 1979.

Rehearing Denied Aug. 9, 1979.

Charles S. Fisher, Jr. of Fisher, Ralston, Ochs & Heck, P.A., Topeka, Kan. (Robert D. Ochs of Fisher, Ralston, Ochs & Heck, P.A., Topeka, Kan., on the brief), for plaintiff-appellant.

Mary K. Briscoe, Asst. U. S. Atty. (James P. Buchele, U. S. Atty., on the brief), for defendant-appellee.

Before SETH, Chief Judge, and DOYLE and LOGAN, Circuit Judges.

WILLIAM E. DOYLE, Circuit Judge.

This is an appeal from a judgment of the United States District Court for the District of Kansas, the effect of which was to sustain the defendant's motion to dismiss a tort claim action against the United States. The claim was based on the two lobotomy operations performed by the government in an effort to control plaintiff's conduct. The

operations occurred at the Veterans Administration Hospital at Topeka, Kansas.

The operations were performed in 1947 and 1948. The trial court ruled that any action was barred by the two-year statute of limitations applicable to the Federal Tort Claims Act under which the suit was brought. The limitations are set forth in 28 U.S.C. § 2401(b).

The basic legal issues, which we must consider, are when this claim accrued and whether the statute of limitations may have been tolled under these circumstances.

Plaintiff entered the Veterans Administration Hospital on or about February 13, 1945, following service in the Air Force. He has been receiving treatment from V.A. facilities ever since that time. In 1947 and again in 1948, lobotomy operations were performed. The plaintiff alleged that the effect of these operations was to take away his mental function. At the time of the operations, the plaintiff-appellant alleged that he had reached his majority and had not been legally declared incompetent. Nevertheless, his father consented to the performance of the operations. The parties disagree about the plaintiff's mental state prior to the operations.

The legal theory alleged in the complaint is negligence by the Veterans Administration Hospital in performing the two lobotomy operations and in caring for the plaintiff. The plaintiff-appellant contends that the claim did not accrue more than two years before it was filed or if the claim did accrue, the statute of limitations was tolled so the action is not barred.

A conservator, Malcolm G. Copeland, was appointed for Mr. Zeidler in October 1975. The conservator has claimed that he was first able to examine the plaintiff's medical records in January of 1976. The conservator filed this suit seeking $1,000,000 in damages on October 13, 1976. The administrative claim, which is required by 28 U.S.C. § 2675(a), was filed in January of 1977 and was denied.

The government's brief provided an extended discussion of the facts, including the plaintiff's antisocial behavior before the operations and other unsuccessful treatments like electroshock therapy. However, these facts are not found in the record on appeal and therefore cannot be considered. The government did request to supplement the record a few days before its brief was filed, but this court denied that request. Most of the information concerns factual issues about which there have been no determinations by the district court.

## I.

### THE DISTRICT COURT'S DECISION

The trial court ruled that, from the face of the complaint, the action was barred by 28 U.S.C. § 2401(b), which provides:

A tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues or unless action is begun within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented.

The trial court reasoned that § 2401(a) and § 2401(b) were mutually exclusive provisions and that subsection (a) applied to all suits against the government except a tort claim against the United States under the Federal Tort Claims Act. For a tort claim, the trial court concluded that it was necessary, since the United States enjoyed immunity generally, to construe the provision strictly and not, therefore, to read anything into it. The district court concluded that the two-year limitations statute was a substantive provision. The explanations of the trial court were as follows:

With these principles in mind we note that while § 2401(a), which applied to "civil actions" provides that the limitations period may be tolled due to "disability", no such tolling provision is present in § 2401(b), which applied here. Therefore, it has been held that an F.T.C.A. claim is not tolled by a plaintiff's minority. *Ashley v. United States,* 413 F.2d 490, 492 (9th Cir. 1969). Nor is a wrong-

ful death claim under the F.T.C.A. tolled by the failure to appoint an administrator. *Foote v. Public Housing Com'r of United States, supra,* [D.P.] 107 F.Supp. [270] at 275–276.

The trial court noted that while there is a tolling provision in § 2401(a) for disabilities, no such express provision appears in § 2401(b). The district court concluded that insanity was a disability for which the statute of limitations in § 2401(b) could not be tolled.

Similarly, it is clearly the law that disability due to insanity or mental incompetency will not toll the running of the two year statute of limitations of § 2401(b). *Casias v. United States,* 532 F.2d 1339, 1342 (10th Cir. 1976), *citing Accardi v. United States,* 435 F.2d 1239 (3d Cir. 1970); *Williams v. United States,* 228 F.2d 129 (4th Cir. 1955), *cert. denied* 351 U.S. 986 [76 S.Ct. 1054, 100 L.Ed. 1499] *reh. den.* 352 U.S. 860 [77 S.Ct. 26, 1 L.Ed.2d 71] (1956); and *Jackson v. United States,* 234 F.Supp. 586 (E.D.S.C.1964). *See also Hoch v. Carter,* 242 F.Supp. 863, 865 (S.D.N.Y.1965); *Wheeler v. Warden,* No. L–1154 (D.Kan., 7/20/70, unpublished); and *Anderson v. United States,* No. 2372 (W.D.Mo., 6/21/68, unpublished).

## II.

## WHEN DOES THE CLAIM ACCRUE?

The first issue is when the statute of limitations commenced to run. Section 2401(b), *supra,* indicates that the time clock starts when the action accrues. Ordinarily an action will accrue when the injury is suffered. Our court, however, has recog-

nized that there are circumstances when a claim accrues at a later time where, for example, the injured person is not aware that he has suffered an injury.

 It is well established that a tort claim against the government accrues for medical malpractice actions when the claimant discovers or in the exercise of reasonable diligence should have discovered, the alleged malpractice. *Exnicious v. United States,* 563 F.2d 418, 420 (10th Cir. 1977).[1] The rationale for the discovery or accrual rule under § 2401(b) is that the plaintiff in a malpractice suit is not to be penalized for "blameless ignorance."[2] A tort growing out of malpractice is not to be barred by the statute of limitations when the delay in commencing the suit resulted from blameless ignorance, an approach that originated under the Federal Employers' Liability Act.[3]

In *Exnicious,* the injury occurred in 1959 by performing surgery before a serious streptococcal infection was cured. The suit, however, was not filed until 1972. The doctors had told the plaintiff that his condition was caused by arthritis. This explanation did not suggest any malpractice. The plaintiff claimed that a number of years had passed before he discovered that his condition was caused by necrosis stemming from surgery while there was an infection. Summary judgment for the government was not proper because there were material fact issues remaining concerning when the plaintiff had a reasonable opportunity to discover all the elements of a possible malpractice action.

In *Exnicious,* Judge Holloway noted that there was a long delay between the injury

---

1. *Bridgford v. United States,* 550 F.2d 978, 981 (4th Cir. 1977); *Reilly v. United States,* 513 F.2d 147, 148 (8th Cir. 1975); *Ciccarone v. United States,* 486 F.2d 253, 256 (3d Cir. 1973); *Kossick v. United States,* 330 F.2d 933, 935 (2d Cir.), *cert. denied,* 379 U.S. 837, 85 S.Ct. 73, 13 L.Ed.2d 44 (1964); *Hungerford v. United States,* 307 F.2d 99, 102 (9th Cir. 1962); *Quinton v. United States,* 304 F.2d 234, 235 (5th Cir. 1962). Only the First Circuit has applied a lex loci rule to determine when the claim accrues. *Hau v. United States,* 575 F.2d 1000, 1002 (1st Cir. 1978).

2. *Kubrick v. United States,* 581 F.2d 1092, 1097 (3d Cir. 1978), *cert. granted,* ––– U.S. –––, 99 S.Ct. 1211, 59 L.Ed.2d 453 (1979); *Exnicious v. United States,* 563 F.2d 418, 425 (10th Cir. 1977); *Jordan v. United States,* 503 F.2d 620 (6th Cir. 1974); *Portis v. United States,* 483 F.2d 670, 673 (4th Cir. 1973).

3. *Urie v. Thompson,* 337 U.S. 163, 169–170, 69 S.Ct. 1018, 93 L.Ed. 1282 (1949); *DeWitt v. United States,* 593 F.2d 276 (7th Cir. 1979).

and the suit, as there is here. Another similarity between *Exnicious* and this case is that an operation gave rise to the problem. In this case, the plaintiff contends that the operations caused his mental incapacity. Undoubtedly, there is a dispute about whether the lobotomies produced the plaintiff's condition, but that is not before us now.

■ This court has interpreted the accrual rule to mean that a claim does not accrue until a claimant has had a reasonable opportunity to discover *all* of the essential elements of a possible cause of action for malpractice—damages, duty, breach, and causation. 563 F.2d at 420–21. In developing this interpretation of the accrual rule, this court followed the Fourth Circuit. *Bridgford v. United States,* 550 F.2d 978 (4th Cir. 1977). The Seventh Circuit has subsequently also used the interpretation in *Exnicious. DeWitt v. United States,* 593 F.2d 276 (7th Cir. 1979). There is some division among the circuits on whether this is the proper interpretation of the accrual rule. The determination of when a claim accrued requires a factual determination about when a person discovered or reasonably should have discovered the alleged malpractice. *Ciccarone v. United States,* 486 F.2d 253, 256 (3d Cir. 1973).

■ The district court in this case has not made any factual determinations concerning when the plaintiff discovered or should have discovered a possible cause of action. Accordingly, the case should be remanded for a full evidentiary hearing by the court to determine when the claim accrued.

## III.

### HAS THE STATUTE OF LIMITATIONS BEEN TOLLED AS A RESULT OF THE PECULIAR FACTS OF THIS CASE?

The assumption of the trial court was that the complaint was based upon insanity.

The court went on to hold that since insanity does not toll the statute of limitations, the statute ran. To treat this situation, however, as a mental disease, such as dementia praecox, loses sight of what plaintiff is alleging. To be sure, the plaintiff is suffering from mental incapacity, but the main thrust of his suit is aimed at the performance of the operations on his brain by the V.A. Hospital. He alleges that this constituted malpractice. It is contended that he lacked capacity throughout the period since the operations were performed.[4]

The trial court looked to this court's recent opinion in *Casias v. United States,* 532 F.2d 1339, (10th Cir. 1976). *Casias* contains a statement on insanity not tolling the statute of limitations in the course of considering a contention of the defendant that the trial court erred in refusing to consider his mental condition during treatment as a possible basis for tolling the statute of limitations. Judge Hill, speaking for the panel, said:

> We hold the trial court was correct. Insanity, such as constitutes a legal disability in most states, does not toll the statute of limitations under the Federal Tort Claims Act.

*Id.* at 1342.

Thus, the court was speaking of the usual variety of mental disease and legal insanity, that is, a mental disease which constitutes a defense to a criminal offense, for example. Certainly this is to be differentiated from a condition such as is before us. The *Casias* panel recognized that in a *malpractice* case the statute can be tolled. It said:

> The fundamental question in this appeal is when the claim accrued so that the time for filing started to run. In medical malpractice actions the claim accrues "when the claimant discovers, or in the exercise of reasonable diligence should have discovered, the alleged malpractice."

---

4. The government maintains that he was incapacitated before the operations were performed. However, we do not have the facts on this and we do not have the facts concerning

the effect that the operations had upon him. It is doubtful, however, whether the operations enhanced his mental capacity.

*Id.* at 1340.

*Casias* is not contrary to the position which we take in this case. We view the injury at bar as possible malpractice which produced brain injury or deficiency. As an alleged malpractice case, the application of the statute of limitations depends on when the action accrued and this, in turn, depends on when the "claimant discovers or should have discovered, the alleged malpractice." This test was applied in *Casias*. The application of it resulted in the conclusion that the trial court had correctly held that the plaintiff there had discovered the injury and consequently that the statute had run.

In our view, the only part of *Casias* which is here applicable is that which treats the question of malpractice. We do not consider the insanity rule discussed in *Casias* to be applicable to the present case.

It would be highly unjust to rule that general insanity and the statute of limitations govern in the extraordinary circumstances which are presented. Would the court have reached the same result if a great deal more brain tissue had been removed? Would the court have reached a similar conclusion if a vital activating nerve to the brain had been severed, whereby the person's awareness was destroyed?

There exists division of authority on the issue of the tolling of the statute in malpractice actions involving the Federal Tort Claims Act. It is plain that this is a far different case even though the operations may have produced a mental deficiency as a result of the removal of brain tissue.

In summary, then, we take the position that the statute of limitations should not be ruled to have automatically run in this case. The need is great to have facts showing or failing to show that the plaintiff knew or should have known that he suffered an injury which gave rise to a possible lawsuit against the government.

We say also that brain damage or destruction is not to be classified in the same way as ordinary mental disease or insanity for the purpose of barring such an action; that the incapability of the plaintiff to comprehend the elements of possible malpractice, if such existed or exists, should indeed toll the statute and should not bar the plaintiff from ever pursuing a remedy for violation of his rights. Therefore, without the presentation of facts concerning the plaintiff's mental capabilities and awareness at the time, we are unable to form conclusions as to whether or not the statute was tolled and, therefore, it is essential that there be a trial in order to test this matter. Surely this is not too much to ask of a court of justice.

## IV.

## OTHER ISSUES

The plaintiff has also argued that the statute of limitations should be tolled in this case because the government fraudulently concealed any claim from the plaintiff or because the plaintiff has been continuously treated by various V.A. facilities since the two lobotomies. Without any facts in the record to support these arguments, it is impossible to determine if they have any merit.

## V.

## CONCLUSION

Factual determinations concerning when this claim accrued must be made by the district court. The question of when the statute of limitations commenced to run can only be answered after a full evidentiary hearing by the court. We are not saying that the plaintiff is entitled to recover, we are merely saying that the plaintiff is entitled to have a full hearing. The case should not be terminated on the basis of pleadings and on the basis of a record that reveals little or nothing about the exact condition of the plaintiff, the extent of the operations performed, and the results, if any, of these operations on the mental condition of the plaintiff. So, we are merely holding that this is not a case for final disposition based upon the pleadings. We are saying that it is a case that should be tried in accordance with the Federal Tort Claims Act and decided on its merits.

The statute of limitations defense is fully and entirely tied to the merits of the case. It may be that there is not much evidence available to either party in view of the passage of time, but we cannot speculate on whether there is evidence which can be produced. Nor do we speculate on the merits of the case.

Accordingly, the judgment of the district court is reversed and the cause is remanded for further proceedings.

LOGAN, Circuit Judge, dissenting:

I sympathize with the result reached in the majority opinion, but I cannot reason to the same conclusion.

Certainly there is a factual distinction between the situation of an individual who is mentally or legally incapacitated at the time of, or after, the injury compensable under the Federal Tort Claims Act, and the case where the tort itself caused the incapacity. In *Exnicious v. United States*, 563 F.2d 418 (10th Cir. 1977), the doctors told the victim his condition was caused by arthritis, an explanation not suggesting any malpractice. When plaintiff found out years later his condition was caused by necrosis stemming from the surgery, our Court held the injury qualified as one not discoverable until he knew of the cause. The result should be no different if the injured party were insane at the time of the injury, and the false representations were made to his parents, spouse or legal guardian. The statute of limitations would not commence to run until the plaintiff (or those presumed responsible for him, if he was legally incapacitated) discovered, or in the exercise of reasonable diligence should have discovered, either that he had an injury or that it might support a malpractice claim.[1] That is not the instant case; the malpractice here, if any, would be observable as soon as the lobotomy was performed, by the family and friends of the plaintiff, if not by him personally.

Courts which have considered the question are unanimous that neither mental nor legal disability tolls the statute of limitations under the Federal Tort Claims Act. *Casias v. United States*, 532 F.2d 1339 (10th Cir. 1976) (insanity); *Accardi v. United States*, 435 F.2d 1239 (3d Cir. 1970) (insanity); *Brown v. United States*, 353 F.2d 578 (9th Cir. 1965) (minority); *Simon v. United States*, 244 F.2d 703 (5th Cir. 1957) (minority); and cases cited Annot., 29 A.L.R. Fed. 482, 528–530 (1976). *Cf. Williams v. United States*, 228 F.2d 129 (4th Cir. 1955), *cert. denied*, 351 U.S. 986, 76 S.Ct. 1054, 100 L.Ed. 1499 (1956) (insanity under Suits in Admiralty Act). There is no exception to the two-year period set forth in the statute; hence it is said the government has waived its traditional immunity only for that period. *See Simon v. United States, supra.* Apparently it is also expected that if there is no guardian or conservator appointed for the disabled injured party, his natural guardians or next friends—parents, spouse, children—will look out for his interest.

In *Jackson v. United States*, 234 F.Supp. 586 (E.D.S.C.1964), a patient suffering from a cerebral vascular accident was treated in a veterans hospital. While he was in a delirious condition hospital employees negligently permitted him to fall out of bed and suffer a serious ankle injury. There is no indication he had a legal guardian at the time of the injury or thereafter. The court held the statute of limitations was not tolled, and barred the claim filed by him more than two years after the injury. *Jackson* states the law applied in all of these insanity and minority cases. If someone is expected to sue within two years on behalf of the injured party suffering from a cerebral hemorrhage, I think the same rule should prevail in a case like that before us. I cannot ascertain a meaningful distinction between the two situations.

Possibly it can be argued that since the natural guardians, Zeidler's parents, consented to the lobotomy, they would not be expected to pursue his claim. But if they

---

1. Apparently the Supreme Court will soon decide whether the statute commences to run when the party knew of the injury but did not know it might support a malpractice claim.

*Kubrick v. United States*, 581 F.2d 1092 (3d Cir. 1978), *cert. granted*, —— U.S. ——, 99 S.Ct. 1211, 59 L.Ed.2d 453 (1979).

had consented to an appendectomy instead, and Zeidler died because of the physician's malpractice, they surely would not hesitate to sue. Plaintiff here seems to argue it was a tort to perform the lobotomy, not that the operation was negligently done. The defendants should be judged by the standards of medical practice at the time of the operation, not from hindsight after thirty years of advancements in medical science. If it was generally considered malpractice to perform lobotomies in 1947 and 1948, the tort was obvious to a knowledgeable observer the day it was done. The parents who consented after being beguiled by misrepresentations of the operating doctor surely would feel free to sue for the injury, at least once they realized it might support a malpractice claim.

Under the majority opinion, as I read it, if Zeidler was mentally incapacitated before the operation then the claim is barred by the statute of limitations; if he was incapacitated by the operation, his claim is not barred. To me that is a distinction without a difference. The factual distinction is being seized upon to avoid the harshness of the rule applied in the insanity and minority cases. Not being able to make intellectual sense of the distinction between the two situations, I cannot take that step. I would affirm the dismissal of the cause.

