Stephen **BARNHART**,
Plaintiff–Appellant,

v.

**UNITED STATES** of America,
Defendant–Appellee.

No. 88–3402.

United States Court of Appeals,
Seventh Circuit.

Argued June 8, 1989.

Decided Aug. 31, 1989.

Rehearing Denied Oct. 17, 1989.

Raymond F. Fairchild, Indianapolis, Ind., for plaintiff-appellant.

Deborah J. Daniels, U.S. Atty., Office of the U.S. Atty., Harold R. Bickham, Indianapolis, Ind., Asst. U.S. Atty., for defendant-appellee.

Before BAUER, Chief Judge,
CUDAHY and KANNE, Circuit Judges.

CUDAHY, Circuit Judge.

As the district court has already noted, this case presents a most unfortunate situ-

ation which, regrettably, we cannot remedy at this late juncture. The plaintiff in this case, Stephen Barnhart, suffers from tardive dyskinesia, an irreversible neurological condition brought on by the use of certain tranquilizers for an unduly long period of time. Barnhart took large doses of these medications over an extended period at the instruction of physicians at various Veteran's Administration ("VA") hospitals. By the time Barnhart's condition was discovered, he had suffered debilitating and irreversible damage. The VA considers Barnhart to be 100% disabled by virtue of his tardive dyskinesia, in combination with some lingering schizophrenic symptoms. Unfortunately, Barnhart delayed in bringing any action or claim against the VA because he was afraid that the VA, upon which he felt completely dependent, might retaliate against him. Because of this delay, the VA denied Barnhart's claim as untimely and the district court dismissed Barnhart's action under the Federal Tort Claims Act as barred by the applicable administrative statute of limitations. Although Barnhart presents a plausible argument for tolling the statute of limitations, his case does not fit within the recognized tolling categories and so must be dismissed. As did the district court we regret the apparent stringency of this result.

## I.

Although the government originally filed a motion for summary judgment, it subsequently requested that the court convert the motion to a motion to dismiss for want of subject matter jurisdiction. The district court, following guidance given by this court in *Crawford v. United States*, 796 F.2d 924, 928–30 (7th Cir.1986), granted the government's request. *Crawford* presented a nearly identical jurisdictional problem under the Federal Tort Claims Act. We noted that such preliminary jurisdictional matters are appropriately dealt with as motions to dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure. Further, as we observed in *Crawford*, the motion to dismiss may be supported by whatever documents might be necessary to resolve the jurisdictional problem; an evidentiary hearing may be held if necessary. *Id.* at 928–29; *see also Wheeler v. Hurdman*, 825 F.2d 257, 259 n. 5 (10th Cir.1987) ("a 12(b)(1) motion is considered a 'speaking motion' and can include references to evidence extraneous to the complaint"). The district court in the case before us did indeed hold a hearing, and thoroughly explored the issues in a most careful and commendable fashion.

We summarize only the pertinent facts; we rely upon the discussion in the district court's opinion for further detail. *Barnhart v. United States*, No. IP 88–274–C (D.Ind. Nov. 28, 1988). We of course would reverse the district court's grant of the government's motion to dismiss if there were any set of facts upon which relief might be granted. *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

Barnhart began his long history of treatment by the VA in the late 1960s after experiencing a psychotic episode. He was diagnosed as schizophrenic and was given substantial doses of Thorazine, along with a number of other neuroleptic drugs, on an ongoing basis for ten or more years. During that period he was treated by physicians at VA hospitals in Indiana (Indianapolis), Kentucky (Louisville and Lexington) and California (San Diego). During the mid–1970's Barnhart apparently began to experience involuntary muscle spasms typical of tardive dyskinesia. Although in 1980 physicians at the San Diego facility considered the possibility that these spasms might indicate early tardive dyskinesia, Barnhart and his mother were not informed of that possibility. By 1983 the VA openly acknowledged in its records that Barnhart had "severe" tardive dyskinesia. The government does not dispute that the first time Barnhart was informed of his condition was after he was seen privately by a neurologist, who on July 13, 1983, sent Barnhart's attorney a letter relaying a diagnosis of "severe tardive dyskinesia from major tranquilizer therapy."[1]

---

1. Tardive dyskinesia is characterized by varying degrees of loss of voluntary musculature. In

Despite this notification in 1983, Barnhart did not file a claim with the VA until 1987. In the meantime, however, he did sue the manufacturer of one of the drugs responsible for his condition. This action, filed in 1985 in federal district court, was subsequently settled. In 1988, as part of the process whereby that suit was settled, a guardian ad litem was appointed for Barnhart. Barnhart attributes his failure to take any action against the VA to a mental condition that sometimes accompanies tardive dyskinesia.[2] An affidavit from a physician who is an expert on tardive dyskinesia offers support for this conclusion. The affidavit notes that Barnhart suffers from difficulty in concentrating and planning ahead, short term memory impairment, retrograde amnesia and emotional instability. The physician, in a supplemental report, further states that the impact of the disease on Barnhart's mental functioning has been "sufficient to render him incompetent to handle his own affairs or to bring a legal action on his own behalf." Supplemental Report at 5. Among the reasons given for this conclusion are that tardive dyskinesia is often accompanied by denial, so that a patient's initial inability to admit that he or she has the disease can be viewed as a part of the disease process. More specifically, the physician noted that Barnhart is fearful of the VA, not only because in Barnhart's view the VA physicians harmed him and might do so again, but also because Barnhart is fully dependent upon the VA for his income and feared that the VA might retaliate should he attempt any sort of malpractice action.

The more general allegations about the impact of the disease on Barnhart's ability to bring any kind of legal action are somewhat undercut by the fact that Barnhart did in fact bring a suit, within the necessary period of time, against the manufacturer of one of the drugs he took. To the extent that tardive dyskinesia involves a denial process that renders patients incapable of *recognizing* that they have the disease at all, Barnhart must have been able to overcome that process in time to sue the manufacturer.

Thus the only assertions relevant here are those that provide some explanation why Barnhart's condition made him specifically unable to proceed against the VA. The physician's discussion of Barnhart's particular fears regarding the VA is framed in terms of Barnhart's underlying emotional problem rather than in terms of the specific effects of tardive dyskinesia:

> The patient's emotional problems have remained severe since the diagnosis of tardive dyskinesia, and would in themselves render him unable to bring an action on his own behalf. While I have diagnosed his schizophrenia as "in remission," this merely means that the more extreme manifestations of hallucinations and delusions are no longer present. As in almost all such cases, the underlying disorder remains in a crippling form.... First, Steve remains in his own words "very paranoid." ... In regard to the Veteran's Administration, he has been especially fearful and paranoid.... In addition, ... [h]e has been afraid to bring a legal action against the VA for fear that in retaliation the VA would reject him from all treatment or injure [him] while in treatment. These fears are a product of Steven's financial dependency on the VA, his paranoid character and his actual negative experiences

Barnhart's case the symptoms include frequent blinking and grimacing and involuntary movements of his mouth, jaw, tongue, hands and arms. His inability to control his respiratory muscles also results in labored breathing that inhibits his speech and swallowing. He has had to undergo eye surgery to prevent spasms from impairing his vision. Additionally, as of 1986 Barnhart had begun to exhibit symptoms characteristic of an organic brain disease associated with tardive dyskinesia. His schizophrenia is now deemed in remission and apparently never reappeared after his lengthy drug treatment was discontinued.

2. As we have noted, Barnhart exhibits symptoms of an organic brain disease associated with tardive dyskinesia, tardive dementia. This brain disease is newly discovered and not widely accepted in the medical community at this time; *for our purposes, we may take as true* that Barnhart suffers the symptoms described and that they derive from his tardive dyskinesia condition, whether or not they can be denominated a separate disease.

with the VA.... Clearly, while Steve may be labeled as "schizophrenia in remission" he is an emotionally crippled person lacking the autonomy or strength to carry on any kind of stressful or frightening activity on his own behalf. This is of course consistent with the fact he receives a 100% psychiatric disability from the VA.

Supplemental Report at 7–9. If we separate for a moment symptoms that are described as associated with Barnhart's preexisting emotional condition from those described as characteristic of tardive dyskinesia, it would seem from the physician's report that the symptoms specifically responsible for Barnhart's reluctance to sue the VA (most notably, his paranoid symptoms) derive more from his preexisting emotional condition than from tardive dyskinesia. However, because we review a motion to dismiss, we will consider also the possibility that Barnhart's fear of proceeding against the VA was at least partially a result of the tardive dyskinesia as well.

## II.

The Federal Tort Claims Act opens an exception to the general rule that the United States is immune from suit, permitting recovery against the federal government for torts committed by agents of the government. However, this limited waiver of immunity is subject to a number of conditions, some of which are set out in 28 U.S.C. section 2401:

(a) Every civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues. The action of any person under legal disability or beyond the seas at the time the claim accrues may be commenced within three years after the disability ceases.

(b) A tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues....

Barnhart has arguably met the requirement of section 2401(a). If we take as given that he first learned of his disability in 1983, then the cause of action began to accrue at that time—and he filed his complaint in the district court in March of 1988, easily within the six-year statute of limitations. However, Barnhart did not file a claim with the VA until 1987, four years after the time the claim accrued and two years after the period of limitations specified by section 2401(b) expired.

Although section 2401(a) contains an exception for persons suffering under a "legal disability," section 2401(b) contains no similar provision. However, we noted in *Crawford* that it is difficult to draw any conclusion from this omission, for subsection (c) refers to a lawsuit in court and "the tolling provision in (a) may simply have been included to avoid the absurdity of telling a person who as a matter of law cannot sue that he must sue or lose his rights." 796 F.2d at 926. Thus the language and structure of the statutory provision by themselves do not foreclose an argument for tolling the administrative statute of limitations set forth in subsection (b).

■ Barnhart's argument for tolling the administrative statute of limitations rests on an established exception to the so-called "discovery" rule. The "discovery" rule decrees that a cause of action under the Federal Tort Claims Act begins to accrue when a plaintiff discovers or should have discovered the cause of his or her injury. *Drazan v. United States*, 762 F.2d 56, 58–59 (7th Cir.1985); *see also United States v. Kubrick*, 444 U.S. 111, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979). The Eighth, Ninth and Tenth Circuits have recognized an "exception" to this rule where the very injury of which a plaintiff complains prevents him or her from being aware of that injury. *Washington v. United States*, 769 F.2d 1436 (9th Cir.1985) (coma); *Clifford by Clifford v. United States*, 738 F.2d 977 (8th Cir.1984) (coma); *Zeidler v. United States*, 601 F.2d 527 (10th Cir.1979) (mental incapacity due to frontal lobotomy).[3] This

3. *See also McDonald v. United States*, 843 F.2d 247, 248–49 (6th Cir.1988), and cases cited there-

is not strictly speaking an exception to the rule, but merely a restatement of the principle that the cause of action will not accrue until the plaintiff could reasonably have been expected to discover the cause of the injury. (A person in a coma cannot reasonably be said to have discovered the cause of the injury just because that cause becomes known by others.) Where the plaintiff was a minor whose parents had a duty to take the initiative in instituting a legal action, or where a plaintiff has an appointed guardian with a similar duty, the plaintiff's incapacity would not appear to be similarly critical. *See Crawford,* 796 F.2d at 927; *Washington,* 769 F.2d at 1439; *see also Landreth by Ore v. United States,* 850 F.2d 532 (9th Cir.1988). But where, as in Barnhart's case, the plaintiff is an adult with no legal guardian appointed, this approach to the "discovery" rule would permit tolling of the statute of limitations if the condition of which Barnhart complains rendered him incapable of "discovering" the cause of his injury.

As noted, we will proceed under an assumption that seems somewhat dubious from the record—that Barnhart's specific reluctance to proceed against the VA resulted in some way from his tardive dyskinesia (and not from paranoia attributable to his ongoing emotional illness). The question we confront is whether, even adopting the interpretation of the "discovery" rule followed by the Eighth, Ninth and Tenth Circuits, the sort of mental disability under which Barnhart suffers would suffice to toll the statute of limitations. The cases permitting such tolling to date have dealt with mental incapacity rendering plaintiffs incapable of "discovering" or understanding the causes of their injuries. *Clifford* and *Washington* involved plaintiffs who were comatose, while *Zeidler* involved a plaintiff who had had two lobotomies. Before *Zeidler,* the Tenth Circuit had already ruled that "insanity" would not toll the statute of limitations. *Casias v.*

in (discussing variation on this exception to discovery rule, tolling statute for period of patient's "blameless ignorance"); *Albertson v. T.J. Stevenson & Co.,* 749 F.2d 223, 230 (5th Cir. 1984); *Phillips v. Purdy,* 617 F.2d 139, 140–41 (5th Cir.1980).

*United States,* 532 F.2d 1339, 1342 (10th Cir.1976). The court in *Zeidler* took great care to distinguish the kind of incapacity involved in the case before it from "the usual variety of mental disease and legal insanity, that is, a mental disease which constitutes a defense to a criminal offense, for example." 601 F.2d at 530. Specifically, the court in *Zeidler* focused on the effect of the lobotomies upon the plaintiff's capacity to discover or become aware of the cause of his injury: "brain damage or destruction is not to be classified in the same way as ordinary mental disease or insanity.... [T]he incapability of the plaintiff to comprehend the elements of possible malpractice, if such existed or exists, should indeed toll the statute...." *Id.* at 531; *see also Barren by Barren v. United States,* 839 F.2d 987, 991–92 (3d Cir.1988). This focus on awareness or ability to comprehend seems appropriate, given that the issue under the discovery rule is not capability to bring a lawsuit, but rather capability to *discover* the cause of injury.

■ If Barnhart was able to proceed against the manufacturer of the drug that injured him at an earlier time, he clearly had "discovered" the cause of his injury— and understood it well enough to seek redress. Even if the injury caused by the VA's alleged malpractice caused Barnhart to develop a specific fear of the VA, thereby preventing him from suing the VA within the applicable time period, the injury clearly did not prevent him from discovering and understanding the cause of that injury. That Barnhart did proceed with a different legal action puts to rest any issue as to his general capacity to bring a legal action. *Cf. Crawford,* 796 F.2d at 930. Thus, as in *Crawford,* we once again leave to another day the issue whether severe mental incapacity tolls the administrative statute of limitations under the Federal Tort Claims Act.[4]

4. We similarly do not reach the issue whether legal incapacity sufficient to toll the section 2401(a) statute of limitations might toll the 2401(b) statute, because there is no sound basis in the documents submitted for concluding that Barnhart was in any way *legally* incapable prior

### III.

We do not here foreclose the possibility that a mental disability preventing a plaintiff from discovering or understanding the cause of an injury (or rendering him or her entirely incapable of bringing a legal action) might toll the statute of limitations in similar cases. However, where the disability at most erodes or impairs a plaintiff's desire to proceed with a recognized cause of action, we can find no support for permitting an exception.

AFFIRMED

---

to 1988 (at which time a guardian ad litem was appointed). Indeed, as Judge Barker observed at the hearing, the indications are to the contrary, for Barnhart was deemed capable of proceeding as a plaintiff in a lawsuit, without any guardian, during that time.