Allen A. CLIFFORD, by his guardian, Dewey J. CLIFFORD, Appellant,

v.

UNITED STATES of America, Appellee.

No. 83–2420.

United States Court of Appeals, Eighth Circuit.

Submitted April 10, 1984.

Decided July 19, 1984.

ment, holding that plaintiff's action was barred by the statute of limitations, 28 U.S.C. § 2401(b) (1982). Because the very negligence alleged in the complaint has kept plaintiff from even knowing of his injury, we reverse.

## I.

Our summary of the facts, as is appropriate on a motion for summary judgment, gives the plaintiff, the party opposing the motion, the benefit of all favorable inferences reasonably available in the record. Between November 3, 1972, and October 1, 1976, Allen Clifford received periodic inpatient and outpatient treatment at Veteran Administration (VA) hospitals in Hot Springs and Fort Meade, South Dakota. VA physicians knew that Clifford suffered depression with suicidal tendencies. As a part of his treatment, the physicians prescribed the anti-depressant drug, Elavil. The prescriptions were refilled on a long-term basis by the VA without check-ups and reevaluations. During the early morning of October 1, 1976, Allen took an overdose of Elavil. He was taken to a hospital, and remains in a "coma vigil state."[1]

Philip N. Hogen, U.S. Atty., Sioux Falls, S.D., Ted L. McBride, Asst. U.S. Atty., Rapid City, S.D., for appellee; Bruce W. Boyd, Sp. Asst. U.S. Atty., Rapid City, S.D., on brief.

Joel T. Hagen, Hagen & Wilka, Sioux Falls, S.D., for appellant Allen A. Clifford; Karen E. Bjerke, Hagen & Wilka, Sioux Falls, S.D., on brief.

Before ROSS, ARNOLD and FAGG, Circuit Judges.

ARNOLD, Circuit Judge.

Allen A. Clifford, by his father and guardian, Dewey Clifford, sued the United States under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b) and 2671 et seq. (1982), alleging that he had fallen into a permanent coma because of malpractice by government physicians. The District Court granted summary judgment for the govern-

At the time of Allen's overdose, he was a twenty-four-year-old student at the University of South Dakota in Vermillion and lived with his brother, Terry Clifford. He has another brother, Gregory, a sister, Linda, and a father, Dewey J. His mother is dead. Allen is divorced and has two small children. He also had a girlfriend, Barbara Wardwell.

On January 23, 1979, Dewey J. Clifford was appointed Allen's guardian. He filed an administrative claim on behalf of Allen on January 16, 1981. The administrative claim was denied, and Dewey filed this action on January 13, 1982. The District Court granted summary judgment, holding that the action was barred by the two-year statute of limitations in 28 U.S.C. § 2401(b). That statute provides:

---

1. At oral argument, the Assistant United States Attorney explained that a "coma vigil state" means that Allen's eyes are open, but "there's nothing there."

(b) A tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues or unless action is begun within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented.

The District Court held that the claim accrued on October 1, 1976, the date Allen went into a coma. Plaintiff argues that the claim did not accrue until a guardian was appointed for Allen. That was the first date, plaintiff says, when someone who had the requisite knowledge of his injury had a legal duty to act for him. We agree with the plaintiff.

## II.

The leading Supreme Court case is *United States v. Kubrick*, 444 U.S. 111, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979). In *Kubrick*, the Court held that a medical-malpractice claim accrues when the plaintiff learns of the existence and probable cause of his injury, even though he may not yet know that any negligence was involved. *Id.* at 122, 100 S.Ct. at 359; *Snyder v. United States*, 717 F.2d 1193, 1195 (8th Cir.1983). Allen remains in a coma, and at all times has been unaware of the existence and cause of his injuries. Plaintiff argues, therefore, that Allen's claim can accrue only when Allen recovers from his comatose condition or dies, or when a person with a specific duty of protecting his interest is invested with appropriate authority, and has the kind of knowledge required by *Kubrick*.

The government argues that because the existence and cause of Allen's injuries were apparent to both his family and girlfriend on October 1, 1976, the claim should accrue on that date. But Allen was an emancipated adult, and neither his girlfriend nor his family had a legal duty to act on his behalf. To hold as the government requests would penalize Allen for the inaction of his family and his girlfriend when he was unable to act. Moreover, if we accept the averments in the complaint as true, as we must for present purposes, his inability to act was the government's own fault.

> [I]t would strain logic and reason to suggest that [plaintiff] could have [acted] had he wished.... During the comatose period, [he] was incapable of comprehending the elements of possible malpractice or of pursuing a remedy for the injuries sustained. More significantly, the very tort that allegedly forms the basis of this suit caused the incapacity.

*Dundon v. United States*, 559 F.Supp. 469, 474 (E.D.N.Y.1983).

*Zeidler v. United States*, 601 F.2d 527 (10th Cir.1979), is the closest case in point. In *Zeidler*, the VA performed two lobotomies on plaintiff with the consent of plaintiff's father in 1947 and 1948. A conservator was appointed for plaintiff in October 1975. The conservator filed a lawsuit on October 13, 1976, and the administrative claim was filed in January 1977, claiming negligence in performing the lobotomies and in caring for the plaintiff. The court held that the action should not be automatically barred, but that an evidentiary hearing was necessary to determine whether plaintiff "knew or should have known that he suffered an injury which gave rise to a possible lawsuit against the government." *Id.* at 531. This could be determined only in the light of "facts concerning plaintiff's mental capabilities and awareness at the time." *Id.*

The government attempts to distinguish *Zeidler*, arguing that the VA was not attempting to control Allen Clifford's conduct as it was Zeidler's, and that Zeidler's injuries probably were not recognizable by Zeidler's father, while everyone around Allen recognized his injury. We find these arguments unpersuasive and the *Zeidler* case indistinguishable. The proffered distinctions are simply irrelevant. The important point is that the VA's actions in performing the lobotomies on Zeidler and in prescribing the Elavil for Allen are the very conduct which allegedly destroyed those plaintiffs' capacities to realize the existence and cause of their injuries.

The government argues further that the statute should be held to have run in this case because it is not ordinarily tolled for infancy, mental incapacity, or death. Those conditions, however, are very different from Allen's case, and our holding does not disturb in any way these well-recognized rules.

When a person is an infant, there are others legally responsible for his or her well-being. The parents or guardians would be under a duty to investigate the injury and its cause, and to take legal action within the time prescribed. See, *e.g.*, *Fernandez v. United States*, 673 F.2d 269, 271 (9th Cir.1982). Allen Clifford had reached the age of majority and had not yet been declared legally incompetent. His case is not like one involving a minor.

And, while mental incompetence generally does not toll the statute of limitations, *Casias v. United States*, 532 F.2d 1339, 1342 (10th Cir.1976),

> [t]o treat this case as one involving mere mental incompetence in the general sense proffered by the government is to lose sight of [Allen's] extraordinary situation. [His] mental condition, allegedly caused *by* his treating physicians, *directly prevented* his understanding the nature and cause of his injuries.

*Dundon, supra*, 559 F.Supp. at 474. (Emphasis supplied).

Similarly, when a person dies, the family and friends know that someone will have to take over his affairs. In this case, Allen's family could have been expecting him to recuperate and take care of his own affairs. In a death case, therefore, unlike Allen's situation, it is fair for the claim to accrue at the time of death.

The government's best argument is that the rule advocated by plaintiff might leave it open to suit indefinitely. No doubt that is true, at least in theory. If, for example, a guardian were appointed ten years or fifty years after the alleged overdose, the statute would not begin to run until that time, under the rule of *Zeidler*, which we adopt today. Probably the real exposure of the government to liability would be slight in such cases, though. The passage of time should make it progressively more difficult for a plaintiff to prove his case. But however that may be, we are persuaded that the rule contended for by the government would be still more objectionable. For under it the government would profit from its own (alleged) wrong. The statute would begin to run immediately at the time of the overdose. The coma that the government had (allegedly) negligently caused would prevent the plaintiff from knowing even that he had been injured, and there would be no one else with a legal duty to sue.

We choose to follow *Zeidler*. It was decided before *Kubrick*, but it is in no wise inconsistent with *Kubrick*. The latter case has to do with what knowledge a claimant must have before the statute begins to run. Here we deal only with that rare situation where the alleged malpractice itself (and not some preexisting mental condition unconnected with the government) has prevented the claimant from ever obtaining that knowledge.

We hold that the statute of limitations did not run during the time Allen was comatose and no guardian had been appointed. The District Court's decision is reversed, and the cause remanded for further proceedings consistent with this opinion. It is of course open to the government to attempt to prove that the facts as to Allen Clifford's comatose condition are different from those alleged in the complaint.

Reversed and remanded.