Kathleen A. ROMANO, Plaintiff,

v.

A.T. CROSS COMPANY, Defendant.

No. 98–22L.

United States District Court,
D. Rhode Island.

Feb. 24, 1999.

7. Plaintiff's Motion Requesting Additional Time (docket No **10**) is **GRANTED.** *See* Plaintiff's Opposition (docket No. **12**).

Albert R. Romano, Romano & Spinella, Providence, RI, for plaintiff.

Thomas Stephen Brown, Stephen A. Rodio, Rodio & Brown, Providence, RI, for defendant.

### MEMORANDUM AND ORDER

LAGUEUX, Chief Judge.

Kathleen Romano ("plaintiff") worked about eight years for the A.T. Cross Company ("defendant"). The Greenville resident is in her mid–40s, but she suffers from various disabilities that keep her from living entirely independently. She works. She banks. She speaks American Sign Language. She drives a car. However, she is deaf and suffers from mental disabilities that affect her dealings with her bosses and the world around her.

In June 1994, plaintiff had a dispute with her supervisors that rests at the base of this matter. Defendant fired plaintiff. She has sued defendant for violation of the Americans With Disabilities Act ("the ADA"), 42 U.S.C. § 12112 et seq. The case is before this Court on defendant's motion for summary judgment.

The parties dispute several facts. They disagree about the date of the termination, i.e., whether it is June 30, 1994 or September 28, 1994. They disagree about the severity of plaintiff's disability. They disagree about what defendant's employees knew about plaintiff's conditions. But there are no disputes over material facts. The parties agree that plaintiff was fired more than 300 days before she filed her September 26, 1995 charge with the Rhode Island Commission for Human Rights ("the Commission").

The only way this federal complaint can survive is if plaintiff can prove that she qualifies for an equitable tolling of the ADA's 300–day statute of limitations. She argues that her mental illness during 1994

and 1995 qualifies her for this tolling under *Lopez v. Citibank, N.A.,* 808 F.2d 905, 907 (1st Cir.1987). That is not true. The *Lopez* rule is a scanty exception to the exacting reality of the statutes of limitations. Nothing about plaintiff's mental problems deprived her of the right to file her claim during the 300–day window. Assuming all facts as plaintiff alleges, her mental illness did not deprive plaintiff and plaintiff's counsel of the knowledge or consent needed to pursue legal remedies. As such, she had only the 300 days that Congress provided for filing ADA claims.

Thus, defendant's motion for summary judgment is granted.

### I. *Facts*

A.T. Cross Co. fired Kathleen Romano, at least in part, because she refused to return her old employee identification badge. On June 20, 1994, new employee badges were issued to all A.T. Cross employees.[1] A supervisor asked plaintiff to return her old badge, and plaintiff refused. At the time, plaintiff was a 40–year–old woman with about eight years of experience as an assembler at the company's Lincoln plant. She is deaf. She is unable to speak out loud. She can speak through American Sign Language, but she suffers from birth defects that manifested themselves in facial deformity and mental impairment. In October 1996, psychologist Frances Demiany found that plaintiff had below-average intelligence and would require ongoing support systems throughout her adult life. Demiany found that plaintiff had the greatest difficulty with tasks involving attention to visual detail and understanding causal relationships.

Plaintiff alleges she did not understand that she was required to return her old badge. No one spoke to her in sign lan-

---

1. Defendant uses June 28, 1994 as the date of the altercation and suspension. (*See* Rule 12.1 Statement of Undisputed Facts at ¶ 5.) Plaintiff uses June 20, 1994. (*See* Complaint at ¶ 12.) The date of the altercation is not material. This Court uses June 20, 1998 because it is stated in the Complaint.

guage. Apparently, she was sensitive about the badge. When a supervisor reached for it, she pushed the supervisor's hand away. When another supervisor tried to grab the badge, plaintiff slapped his hand. Apparently, that was too much for the company to handle from an eight-year employee. The supervisors sent plaintiff home from work and suspended her from her job.

There is a dispute over when plaintiff was fired. Plaintiff alleges that her family negotiated with defendant throughout the summer, trying to work out a system through which plaintiff could return to work. Plaintiff alleges that defendant's attorney made the termination official on September 28, 1994, retroactive to the date of suspension. Defendant alleges that defendant's employee, David Zito, told plaintiff's father and sister on June 30, 1994 that plaintiff was terminated as of that day.

The parties agree that plaintiff's family tried to convince defendant to take plaintiff back as an assembler. Plaintiff's father and sister met with Zito on June 30, 1994. Her mother met with executives of defendant in July or August, and her brother Albert Romano, a Providence attorney, joined several discussions. Finally, Albert Romano filed a charge on plaintiff's behalf against defendant with the Commission. That charge, accompanied by a letter from Romano's law partner David M. Spinella, was filed September 26, 1995.

## II. *Legal Standard for Motion for Summary Judgment*

Rule 56(c) of the Federal Rules of Civil Procedure sets forth the standard for ruling on summary judgment motions:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed.R.Civ.P. 56(c). Therefore, the critical inquiry is whether a genuine issue of material fact exists. Material facts are those that might "affect the outcome of the suit under the governing law." *Hinchey v. NYNEX Corp.*, 144 F.3d 134, 140 (1st Cir. 1998) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986)). A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could resolve it in favor of either party. *See Cadle Co. v. Hayes*, 116 F.3d 957, 960 (1st Cir.1997).

The party moving for summary judgment bears the initial burden of demonstrating that there are no genuine issues of material fact for trial. See *Hinchey*, 144 F.3d at 140. This burden may be discharged by pointing out that there is an absence of evidence to support the non-moving party's case. *See id.* Then, the burden shifts to the nonmoving party who must demonstrate that a trier of fact reasonably could find in his favor as to each issue on which he has the burden of proof. *See id.*

On a motion for summary judgment, the Court must view all evidence and related inferences in the light most favorable to the nonmoving party. *See Springfield Terminal Ry. Co. v. Canadian Pac. Ltd.*, 133 F.3d 103, 106 (1st Cir.1997). "[W]hen the facts support plausible but conflicting inferences on a pivotal issue in the case, the judge may not choose between those inferences at the summary judgment stage." *Coyne v. Taber Partners I*, 53 F.3d 454, 460 (1st Cir.1995). Similarly, "[s]ummary judgment is not appropriate merely because the facts offered by the moving party seem more plausible, or because the opponent is unlikely to prevail at trial." *Gannon v. Narragansett Elec. Co.*, 777 F.Supp. 167, 169 (D.R.I.1991).

### III. "Lopez" and Mental Illness

In Rhode Island, an ADA claim must be filed within the 300 days set by Congress. *See* 42 U.S.C. § 2000e–5(e)(1). *See also Kassaye v. Bryant College*, 999 F.2d 603, 605 & n. 3 (1st Cir.1993) (Rhode Island is a deferral state and 300–day period applies). The date that 300–day clock begins to tick is determined by reference to federal law. *See Madison v. St. Joseph Hospital*, 949 F.Supp. 953, 959 (D.N.H. 1996) (quoting *Muniz–Cabrero v. Ruiz*, 23 F.3d 607, 610 (1st Cir.1994)). Under federal law, accrual of a discrimination claim commences when a plaintiff knows, or has reason to know, of the discriminatory act that underpins his or her cause of action. *See id.* (quoting *Morris v. Government Dev. Bank of Puerto Rico*, 27 F.3d 746, 749 (1st Cir.1994)).

A district court may toll the statute of limi tations—metaphorically keep the 300–day clock from ticking—during a period in which mental illness deprived plaintiff and plaintiff's counsel of the knowledge or consent needed to pursue legal remedies. *See Lopez*, 808 F.2d at 907 (interpreting Title VII, the statute that is referenced by the ADA). To survive summary judgment, the plaintiff need only raise a genuine issue of material fact as to whether the mental illness met the *Lopez* standard. *See Nunnally v. MacCausland*, 996 F.2d 1, 4–7 (1st Cir.1993) (discussing *Lopez* in the context of the Rehabilitation Act). If plaintiff raises a genuine issue, then the Court should delay ruling on the matter until hearing all the evidence. *See id.* at 7.

Determining the impact of the mental illness is a case-specific analysis. *See Lopez*, 808 F.2d at 907. The *Lopez* opinion offers meager guidance to a district court, but then-Judge (now Justice) Stephen Breyer was clear that the court should weigh whether the plaintiff was represented by counsel during the period of the claim. *See id.* In fact, the fact that Lopez had an attorney was a key to the *Lopez* panel's decision:

> Appellant was represented by counsel during his period of illness, and counsel pursued appellant's discrimination claim before the EEOC. It thus seems unlikely that appellant's illness deprived his counsel of the knowledge or consent needed to file a court complaint; it is more likely that counsel knew plaintiff wished to pursue his legal remedies and knew (or should have known) about the relevant limitations period. And, appellant has alleged no specific facts that would show the contrary.

*Id.*

### IV. Applied to this Case

Albert Romano filed the charge with the Commission on behalf of his sister on September 26, 1995. That was more than 300 days after September 28, 1994, which is the latest date that a jury could find that plaintiff was terminated. That is why equitable tolling becomes crucial to this case.

Kathleen Romano lives day-to-day with handicaps, including her deafness and mental deficiencies that make it difficult for her to understand complex ideas and problems. For purposes of this motion for summary judgment, this Court assumes as true that she fell into a depression after losing her job at A.T. Cross and that the depression exacerbated her established problems. It is further assumed that she was fired on September 28, 1994, that she refused to speak with family members, and that she stopped functioning independently.

The key to this case is that plaintiff, like Lopez, never had to rely solely on her own ability to pursue her claim. Plaintiff asks this Court to consider the post-firing depression and deterioration ("the Temporary Condition") to be a mental illness that qualifies for *Lopez* tolling. The problem is that there is no evidence

that the Temporary Condition deprived plaintiff of her ability to file a claim.[2] In fact, plaintiff's base-line disability made her incapable of pursuing her claim or filing suit without the assistance of her family and an attorney. She needed her family to try to get her job back from defendant and then seek a remedy when negotiations failed. She could not have articulated her civil rights allegation in 1994 any more than she could explain the ADA in her deposition in this case. She would have needed her family to pursue the claim even if she had not become uncommunicative and depressed in the summer of 1994.

The fact is that the Temporary Condition did nothing to affect that ability to pursue her claim between September 28, 1994 and July 25, 1995. She had her family, and most importantly, she had an attorney, her brother Albert Romano. If anything, the Temporary Condition was proof of the injury that plaintiff suffered. It should have spurred Albert Romano to file a timely claim. There is no evidence that it created any impediment to identifying the claim and filing it with the Commission.

The First Circuit's doctrine does penalize plaintiff for the inaction of plaintiff's attorney, and under *Lopez*, a court can refuse to toll the statute of limitations for a represented plaintiff even though it might give a break to a destitute, pro se plaintiff. That is the reality of an equitable standard. Plaintiff argues that her relatives, including Albert Romano, had no legal duty to act on her behalf. However, that is immaterial because the First Circuit emphasized the attorney's knowledge, not his duty:

> [I]t is more likely that counsel knew plaintiff wished to pursue his legal reme-

dies and knew (or should have known) about the relevant limitations period. *Lopez*, 808 F.2d at 907.

In fact, that is precisely what happened in this case. Plaintiff's family, including Albert Romano, knew in July 1994 that plaintiff wanted her job back. They knew the basic facts surrounding her dismissal. By July 1994, they had asked psychologist Gail Mastropietro to inform defendant that the June 20, 1994 incident occurred because defendant failed to meet needs that arose from plaintiff's disability. That is the crux of the claim. Plaintiff's counsel knew all this, and he should have known about the statute of limitations. The letter written by plaintiff's counsel to the Commission asked the Commission to act before September 28, 1995 because "[t]his may be a time sensitive issue." (Letter from Spinella to Rhode Island Commission of Human Rights of 9/21/95, at 1 .) In fact, it was a time sensitive issue. The charge should have been filed, at the latest, by late July to meet the federal 300–day limitations period.

Despite plaintiff's claim, the Eight Circuit offers no support in *Clifford by Clifford v. United States*, 738 F.2d 977 (8th Cir.1984), because it distinguishes the coma in that case from infancy or mental incapacity. *See id.* at 980.

## CONCLUSION

For the preceding reasons, defendant's motion for summary judgment is granted. This Court cannot reach the merits of plaintiff's claim. Judgment shall enter to that effect for defendant, A.T. Cross Company.

It is so Ordered.

---

**2.** Plaintiff's baseline disability could not toll the start of limitations. Despite her handicaps, she has never been adjudicated incompetent, and she was capable, with the assis-

tance of her family, of filing the state charge in September 1995 and this civil action in January 1998.