SMITH, Circuit Judge,
dissenting.
I respectfully dissent from the majority’s conclusion that Vicki Miller’s survival action against the United States pursuant to the Federal Tort Claims Act (FTCA) is not time-barred. In my view, we are bound by the Supreme Court’s decision in United States v. Kubrick, 444 U.S. 111, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979), and this Court’s decision in Barren by Barren v. United States, 839 F.2d 987 (3d Cir.1988), to apply an objective test in determining when the statute of limitations began to run on Miller’s survival claim under the FTCA. Because Barren applied the objective test and refused to toll the statute even though the government’s negligence aggravated the plaintiffs mental illness to such an extent that he was unable to perceive that he had been injured, there is no basis to create an exception which would allow tolling here where Henry Miller’s inability to recognize the fact that he had been injured was not attributable to the government’s conduct.
The majority ignores Kubrick’s admonition that the FTCA’s statute of limitations must be narrowly construed in order to avoid “extending] the waiver [of sovereign immunity] beyond that which Congress intended.” 444 U.S. at 118, 100 S.Ct. 352. Furthermore, the majority misreads Barren en route to creating an exception to Kubrick’s objective test which allows tolling for a mentally incapacitated adult if the record fails to establish that he has an appointed guardian. The lack of an appointed guardian is not an exception to Kubrick’s objective test, and I have found no case law that would support creating such an exception. For that reason, I write separately to explain why the objective reasonable person standard applied in Kubrick and Barren is controlling and compels the conclusion that the District Court correctly dismissed Miller’s FTCA survival claim as time-barred.
I also disagree, for the reasons explained below, with the majority’s determination that the District Court improperly dismissed Vicki Miller’s state law survival action against Dr. Markowitz, and that it conflated her wrongful death claims with her survival actions.
I.
The facts set forth by the majority are not in dispute. The decedent, Henry Mil *278 ler, was born severely retarded in 1933 and attained the mental age of a four year old. In his mid-fifties, Henry was placed in a community living arrangement and his sister, Vicki Miller, regularly visited him. Due to a toxic Lithium level, Henry became seriously ill in 1995. His sister was “repeatedly advised that her brother’s condition was caused by an adverse reaction to the combination of medication that had been prescribed....” Maj. op. at 269. Despite treatment, Henry did not recover, and he died on September 24,1997.
Vicki Miller filed suit on September 21, 1999. Pursuant to the FTCA, Miller asserted a survival action against the United States. The question is: when did Miller’s survival action accrue — in October of 1995 when she learned of the cause of her brother’s injury — or in September of 1997 when he died?
The majority determines that the survival claim accrued when Henry died in September of 1997. I disagree. My analysis leads me to conclude that Vicki Miller’s survival claim accrued when Henry was hospitalized in 1995 and she was repeatedly informed that his illness was caused by a reaction to his medication. In my view, the majority disregards the Supreme Court’s teaching in Kubrick and misapplies this Court’s decision in Barren.
A.
In United States v. Kubrick, 444 U.S. 111, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979), the Supreme Court determined that an FTCA claim accrues when the plaintiff knows both the existence of his injury and who has caused the injury. Id. at 123. Kubrick established the general rule— which the majority acknowledges — that the inquiry is an objective one requiring a determination of whether a reasonable person should have known of the injury and who caused it. See Barren by Barren v. United States, 839 F.2d 987, 990 (3d Cir.1988) (discussing Supreme Court’s analysis in Kubrick).
In Barren, the plaintiff, a veteran, suffered a service-related mental disability. 839 F.2d at 987. Although he sought treatment from the Veterans Administration (VA) in 1973, he was advised that his mental infirmity was not service-related and he was denied admission for in-patient treatment. Recognizing that Barren needed treatment, his sister, Henrietta, and his family sought alternate treatment in several private facilities in 1974. In October of 1977, the VA reversed its prior determination that Barren’s mental condition was not service-related and awarded him a partial disability, subsequently increasing his disability to 100 percent. In September of 1979, Henrietta filed two FTCA claims, one on behalf of her brother and the other in her own right, seeking reimbursement for medical expenses she incurred on her brother’s behalf. She alleged that the VA had negligently failed to admit her brother for in-patient treatment and that its psychiatric treatment was substandard. Henrietta was not appointed her brother’s guardian, however, until June of 1981.
The District Court dismissed Henrietta’s claim as untimely. Barren’s FTCA claim, the District Court ruled, was viable because his diminished mental capacity, caused by the VA’s negligence, had prevented him from appreciating the fact that he had been injured. After conducting a bench trial, the District Court found that the VA was negligent and awarded damages to Barren.
The United States appealed. It did not dispute that its negligence had caused Barren’s inability to perceive his injury. Rather, the VA asserted that Barren’s claim was time-barred and that the District Court erred by considering Barren’s *279 mental infirmity instead of applying Kubrick’s objective standard. The Barren majority viewed Barren’s sister, even though she was not a guardian at the relevant time, as an objectively reasonable person. 839 F.2d at 991. It concluded that, in light of the fact that Henrietta and Barren’s family sought alternate treatment for Barren in 1974, a reasonable person should have known at that time that the YA’s care was inadequate and that Barren had been harmed by the VA’s refusal to admit him for treatment. The question was whether Barren’s mental infirmity was a factor in the determination of when his claim accrued.
The Barren panel agreed that Kubrick’s objective test generally controls the determination of when a FTCA claim accrues. The panel also agreed that an individual’s mental infirmity is not a factor that may be considered under Kubrick’s objective test. 839 F.2d at 995 (Becker, J., dissenting) (noting agreement with the majority that the “general rule” is that Kubrick’s objective test governs the determination of when a statute of limitations begins to run and that tolling is not permitted “by reason of infancy or mental disability”). Even though dissenting, Judge Becker vigorously argued for a narrow exception in which the statute of limitations is tolled for “a plaintiff whose ability to perceive that the government injured him was destroyed by the government’s negligent care until the plaintiff is affirmatively informed of the injury in a way he can understand, or until a guardian is appointed.” Id.
As support for this narrow exception, Judge Becker relied on two cases presenting FTCA claims on behalf of adults who suffered from a coma induced by the government’s negligence, and who, because of their mental incapacity, were unable to recognize that they had been injured. Id. at 997 (discussing Clifford by Clifford v. United States, 738 F.2d 977 (8th Cir.1984), and Washington v. United States, 769 F.2d 1436 (9th Cir.1985)). As a result of the plaintiffs’ inability to detect that they were injured, the FTCA claims in these two coma cases were filed beyond the two year limitations period. Although the government argued that the claims were time-barred, in each case the Court determined that the claim did not accrue until either a guardian was appointed, Clifford, 738 F.2d at 980, or the plaintiff died, Washington, 769 F.2d at 1439. The Clifford Court pointed out that it was presented with more than just a plaintiff suffering from a mental infirmity. 738 F.2d at 979-980. Rather,, the government’s conduct caused both the mental infirmity and the inability to perceive that he had sustained an injury. This extraordinary situation warranted tolling the statute of limitations because tolling prevented the government from profiting from its own wrong. Clifford, 738 F.2d at 980; Washington, 769 F.2d at 1439 (following Clifford). Consistent with this analysis, Judge Becker stressed that he advocated for the exception “not because of Barren’s mental incompetency simpliciter, but because of the government’s conceded participation in Barren’s inability to perceive his injury.” Id. at 1000.
Although the Barren majority found that Barren’s injury, and the reason for his inability to recognize the same, were a “compelling reason to excuse” Barren’s untimely claim, it concluded that “Kubrick makes clear[] the rule cannot be subjectively applied.” 839 F.2d at 992, 994 (Slo-viter, J., concurring) (acknowledging that “fairness requires that we relax the rule,” but that “is an issue for Congress”). To allow Barren to file later than an objectively reasonable person, we explained, “would be tantamount to ruling that a plaintiffs mental infirmity can extend the statute of limitations.” Id. at 992, 994 (Sloviter, J., *280 concurring) (finding that inclusion of plaintiffs mental disability “interposes an impermissible subjective element into the reasonable person standard”). Mindful that “limitations periods must be strictly construed, especially those involving a waiver of sovereign immunity,” the Barren majority refused to embrace the exception urged by the dissent. Id. As a result, irrespective of the fact that the government’s negligence caused Barren’s inability to perceive that he had been injured, Barren’s case was viewed and resolved on the basis that it involved a mental infirmity, nothing more. Because Barren’s FTCA claim was filed after the two year limitations period, the majority determined it was time-barred.
B.
In my view, Barren governs this case. The facts are nearly identical.[6] In Barren, the FTCA action was filed on behalf of an adult who suffered from a mental disability such that it prevented him from recognizing that he had been injured at the hands of the government. Although Barren’s mental infirmity was substantial, he lacked a legal guardian at the time he was negligently treated. His sister, however, was aware of the facts regarding his condition, his unsuccessful attempts to obtain treatment from the VA, and that, as a result of the VA’s refusal to treat him, she and her family had to obtain treatment for her brother elsewhere. These facts, the Barren majority concluded, were sufficient to demonstrate that a reasonable person should have known in 1974 that Barren was injured by the VA’s substandard care.
Similarly, in this case, we are presented with an FTCA claim filed on behalf of an adult, Henry Miller, who suffered from a mental disability that prevented him from recognizing that he had been injured as a result of the government’s conduct. As in Barren, the disabled party’s sister, here Vicki Miller, was not his guardian at the time he suffered an injury as a result of the government’s negligence. Nor was she his guardian before this FTCA suit was filed, a fact that also parallels Barren. Vicki Miller, who regularly visited her brother, was aware of her brother’s longstanding mental incapacity, his sudden physical illness requiring hospitalization, the cause of his illness, and the course of his medical treatment.
Because the facts in this case are nearly identical to those in Barren, I cannot accede to the majority’s view that Barren is not controlling because it “addresses only the specific class of plaintiffs who were not only injured by the government, but were also prevented from recognizing their injuries by the government’s malfeasance.... ” Maj. op. at 274. Barren, contrary to the majority’s reading, treated this very class of plaintiffs in the same fashion as any other plaintiff suffering from a mental infirmity which precluded that person from recognizing that he had been injured at the hands of the government. See Barren, 839 F.2d at 996 (Becker, J., dissenting) (emphasizing that the Barren majority’s decision “ignores the added special factor of the government’s participation in Barren’s inability to comprehend his injury and its cause”). Indeed, Barren explicitly *281 rejected the argument that the government’s connection with the plaintiffs inability to perceive his injury warranted an exception to the application of Kubrick’s objective test. In short, the “difference” between Barren and the instant case is that in the former, the circumstances favoring an exception to Kubrick were more compelling than those before us. Still, this Court in Barren declared that Kubrick’s objective reasonable person test governed the timeliness of Barren’s FTCA claim regardless of the nature or cause of the plaintiffs mental incapacity.
Thus, in my view, the District Court correctly applied Kubrick’s objective test, as we did in Barren, without regard to the nature or cause of Henry Miller’s mental incapacity. Because a reasonable person, like Vicki Miller, was aware of Henry’s condition, his sudden illness and the cause of his demise more than two years before the filing of this suit in 1999, Miller’s FTCA survival action should be time-barred.
The majority further misapplies Barren by reasoning that Vicki Miller’s knowledge was “irrelevant to a determination of when the statute of limitations ran” because she was not his guardian. Maj. op. at 273. The Court in Barren instructed that, in deciding when the limitations period begins to run, the critical inquiry is what an objectively reasonable person should have known. 839 F.2d at 991. To that end, we viewed Barren’s sister, Henrietta, as an objectively reasonable person, not because she had been appointed Barren’s guardian years after the negligence occurred, but because she was familiar with the circumstances surrounding her brother’s treatment over the years.[7] 839 F.2d at 991, and at 994 (Sloviter, J., concurring) (applying the reasonable person standard and noting that the only distinction between plaintiff and his sister was his mental incapacity). In fact, in viewing Barren’s sister as an objectively reasonable person, we attached little, if any significance, to the fact that she was appointed Barren’s guardian. We acknowledged that a guardian’s knowledge may be imputed to the incapacitated person, 839 F.2d at 991 n. 7, but we rejected the argument that the lack of a guardian “could allow an incompetent plaintiff to circumvent the statute of limitations.” Id. Thus, Barren taught that guardianship status is not determinative of whether the knowledge a person possesses is on a par with that of the objectively reasonable person. Restatement (Second) of Torts § 283 comment c (1965). For that reason, I cannot agree with the majority that the District Court erred by viewing Vicki Miller as an objectively reasonable person for purposes of ascertaining when Miller’s FTCA survival action accrued.
The majority, however, finds the fact that Henry lacked a guardian to be of critical importance. It reasons that Henry’s situation is like that of the plaintiffs in the two coma cases identified by Judge Becker in his dissent in Barren, 839 F.2d at 997 (discussing Clifford, 738 F.2d at 979-80, and Washington, 769 F.2d at 1436). Because the statute of limitations was tolled for those plaintiffs, who like Henry suffered from a mental disability and lacked guardians, the majority concludes that the statute should also be tolled for Henry.
*282 In my view, these two coma cases are distinguishable in several important respects. In Clifford and Washington, as in Ban'en, the determination of when the FTCA claims accrued involved more than just a consideration of the plaintiffs’ mental infirmity. Clifford, 738 F.2d at 980; Washington, 769 F.2d at 1439; see also Barren, 839 F.2d at 996 (Becker, J., dissenting) (explaining that this case involved more than a mere mental incapacity). In these cases, there was a mental infirmity caused by the government plus the fact that the mental infirmity caused by the government’s negligence prevented the plaintiff from appreciating that he had been injured and by whom. In light of these circumstances and the fact that these formerly competent adults had no one to represent their interests, the Courts of Appeals for the Eighth and Ninth Circuits concluded that their FTCA claims did not accrue until either a guardian was appointed or the plaintiff died.[8] See Barren, 839 F.2d at 997 (discussing Clifford, 738 F.2d at 979-80, and Washington, 769 F.2d at 1438). Under those extraordinary circumstances, tolling was appropriate, as the Clifford Court explained, to prevent the government from profiting from its own wrong. 738 F.2d at 980.
Indeed, the Clifford Court pointed out that its holding was limited to the “rare situation where the alleged malpractice itself (and not some preexisting mental condition unconnected with the government) has prevented the claimant from ever obtaining that knowledge.” Id. Thus, tolling was not warranted simply because these mentally incapacitated adults had no guardian.
Unlike the plaintiffs in Clifford and Washington, Henry Miller was not competent at any point in time before the government’s conduct caused his Lithium to reach a toxic level. Henry was born severely retarded and attained the mental age of a four year old. As a result, the government’s negligent conduct neither caused nor aggravated Henry’s mental infirmity and Henry’s inability to recognize his injury was not attributable to the government’s conduct. Thus, application of Kubrick’s objective test here would not allow the government to profit from its own wrong. In short, we are not confronted with the extraordinary circumstances present in Clifford and Washington, where the government’s conduct is the reason that the plaintiff was unable to perceive his injury and timely initiate suit. For that reason, I do not believe that these two cases support creating an exception in the case sub judice to the FTCA’s statute of limitations, which would allow tolling simply on the basis that this record fails to establish that Henry had a guardian in the latter years of his life.
Indeed, in Barren, we explicitly rejected the concept that the lack of a guardian for a mentally infirm adult plaintiff could toll the statute of limitations. We observed that “[a] deliberate delay in the appointment of a guardian, under plaintiffs view of the statute of limitations, could allow an incompetent plaintiff to circumvent the statute of limitations.” 839 F.2d at 991 n. 7. We declared that “[t]here is no reason why such a delay in the appointment of a guardian should work to the detriment of the government.” Id. My research has failed to unearth any case law holding that the absence of a guardian, without more, *283 warrants tolling the FTCA’s statute of limitations for a mentally incapacitated plaintiff.
In my view, this novel exception created by the majority in the absence of truly extraordinary circumstances like those in the coma cases not only lacks any legal support, it erodes the well-settled rule that the FTCA’s two year limitations period is not tolled by reason of mental incapacity. As a result, this exception fails to heed the Supreme Court’s admonition that the FTCA’s limitations period must be carefully construed to avoid “extending] the waiver [of sovereign immunity] beyond that which Congress intended.” Kubrick, 444 U.S. at 118, 100 S.Ct. 352. Moreover, the majority’s approach ignores the fact that this Court’s decision in Barren binds us until it is set aside by an en banc panel of this court. See Third Cir. I.O.P. 9.1.
In sum, Kubrick must guide our analysis. The reasonable person is that individual who is armed with the facts regarding the injuries sustained. 444 U.S. at 123, 100 S.Ct. 352. Barren confirms as much by observing that the Supreme Court’s concentration in Kubrick was on the objective aspects of the test and “whether [the plaintiff] possessed the facts such that, as a reasonable person, he should have known of’ the injury and who caused it. Barren, 839 F.2d at 990; see also Restatement (Second) of Torts § 12 (stating that “the words ‘should know' ... denote the fact that a person of reasonable prudence and intelligence or of the superior intelligence of the actor would ascertain the facts in question ... or would govern his conduct upon the assumption that such fact exists”) (emphasis added). Because Vicki Miller was repeatedly advised in October of 1995 that Henry’s medical status was caused by a reaction to his medications, and because these facts demonstrate that a reasonable person should have known at that time that Henry had been injured by the government, the District Court correctly concluded that the FTCA survival action filed more than two years later was time-barred.[9]
II.
I also disagree with the majority’s conclusion that Miller’s state survival action against Dr. Markowitz was timely filed. The majority reaches this conclusion, in my view, by misreading Fine v. Checcio, 582 Pa. 253, 870 A.2d 850 (2005), as authority to apply a subjective test to determine whether the statute of limitations had run. By applying a subjective test, the majority takes account of the fact that the decedent had the mental age of a four year old and concludes that there is a genuine issue of fact as to whether the “decedent knew, or, more accurately, was even capable of knowing, that he was injured and the cause of his injury.” Maj. op. at 276.
Fine, contrary to the majority’s analysis, did not concern whether an objective or subjective test is to be employed in the application of the discovery rule to a statute of limitations dispute. Thus, the Fine Court did not abandon the objective test used in determining whether the statute of limitations may be tolled by Pennsylvania’s discovery rule. Rather, Fine concerned two mentally competent adults who did not *284 discover until late in the two year limitations period that they had been injured by the negligence of their treating medical practitioners. The question before the Court was whether these plaintiffs had to file their cause of action within the remaining time in the two-year limitations period, or within two years of the discovery that they had been injured. The Court held that
it is not relevant to the discovery rule application whether or not the prescribed period has expired; the discovery rule applies to toll the statute of limitations in any case where a party neither knows nor reasonably should have known of his injury and its cause at the time his right to institute suit arises.
Id. at 859 (emphasis added). Indeed, by focusing on “where a party ... reasonably should have known,” the Pennsylvania Supreme Court did not change the course of Pennsylvania’s discovery rule. Because application of the objective test shows that a reasonable person would have known of the decedent’s injury and its cause more than two years before this suit was filed, I cannot agree with the majority that Miller’s state law survival action against Dr. Markowitz was timely filed.
III.
The majority also concludes that Miller sufficiently pleaded wrongful death claims against Dr. Markowitz and the United States by alleging nothing more specific than negligence. I can discern no wrongful death claims, even liberally construing the pleadings. The amended complaint, prepared and signed by experienced counsel, clearly states on the first page that Miller was bringing this action “pursuant to the Pennsylvania Survival Act, 42 Pa. Cons.Stat. § 8802.” Thereafter, she asserts six counts alleging that the negligence of various persons caused the decedent to sustain various maladies and that he eventually died. In my view, the mere reference to death in the amended complaint, without more, is insufficient to put the defendants on notice that Miller was asserting, in addition to her clearly articulated survival action, a wrongful death claim under a separate statutory provision of Pennsylvania law, ie., 42 Pa.Cons.Stat. § 8301. See Conley v. Gibson, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) (instructing that Rule 8 requires a statement of the claim “that will give the defendant fair notice of what the plaintiffs claim is and the grounds upon which it rests”).
Indeed, my review of the record fails to reveal any action by Miller, either before or after the District Court granted the motion for summary judgment, that indicated that Miller was in fact prosecuting a wrongful death action. The absence of a wrongful death claim would not have been surprising in light of the fact that Miller did not qualify as one of the enumerated beneficiaries for whom the statute created a right of action. See 42 Pa.Cons.Stat. § 8301(b) (stating that the “right of action created by this section shall exist only for the benefit of the spouse, children or parents of the deceased”). Although subsection (d) allows a personal representative, such as Miller, to bring a wrongful death action, any recovery is limited to specific types of damage that may have been incurred as a result of the injuries causing death. 42 Pa.Cons.Stat. § 8301(d) (specifying that the personal representative “may bring an action to recover damages for reasonable hospital, nursing, medical, funeral expenses and expenses of administration necessitated by reason of injuries causing death”).
Thus, the District Court understandably addressed only the merits of Miller’s survival action. After the District Court en *285 tered judgment in favor of the United States and Dr. Markowitz and closed the case, Miller still did not take any action to notify the District Court that it had erred by dismissing her wrongful death claim. Instead of filing a motion for reconsideration, which would have provided the District Court with its first opportunity to address the viability of a wrongful death claim, Miller filed this appeal alleging error by the District Court. In light of the failure to plead a wrongful death action and the absence of any conduct which would have notified the District Court that this separate cause of action was at issue, I cannot subscribe to the majority’s conclusion that the District Court erred by conflating the two causes of actions. Indeed, in my view, there were not two causes of action to conflate.
IV.
In sum, I submit that Miller’s FTCA and state law survival actions were time-barred because the cause of action accrued more than two years before she filed suit. Because Miller did not allege a wrongful death claim under the FTCA or state law, remand is unnecessary. I would affirm the judgment of the District Court.

. It is true that the nature of Henry’s mental incapacity is distinguishable to a degree from that suffered by Barren and that, as the majority notes, "Henry’s position most closely resembles a plaintiff who is a legal minor." Maj. op. at 274. This difference, however, is irrelevant for purposes of this appeal. Infancy does not toll the statute, and Henry's similarity to that of a minor requires application of the objective reasonable person test. Barren, 839 F.2d at 995 (Becker, J., dissenting) (agreeing with the majority that the two year limitations period for FTCA claims is not tolled by reason of one's infancy).

. Restatement (Second) of Torts, § 283 comment c (1965) (stating that the "reasonable man is a fictitious person”); and comment d (explaining that the "qualities of a reasonable man which are of importance differ with the various situations ... [and] are those which are necessary for the perception of the circumstances existing at the time of his act or omission)” (emphasis added).

. The majority does not explicitly state when Miller’s FTCA survival claim accrued. Inasmuch as the majority explains that the coma cases are instructive and that "Henry Miller presents a legal situation akin to those plaintiffs in Clifford and Washington," maj. op. at 275, and because the record does not indicate that Henry had a guardian, I must assume that the majority determines that Miller's claim accrued on Henry’s date of death.

. I also note that the record demonstrates that Vicki Miller appreciated the cause of her brother's illness in December of 1995 when she wrote to Dr. Bongiorno, a physician at a health care facility to which her brother had been transferred. In her letter, she explained that, according to another physician, "Henry’s condition was brought about by an adverse reaction to drugs that were prescribed for him....” This evidence further supports the conclusion that a reasonable person should have known by late 1995 that Henry's illness was attributable to the government’s medical care.